## In re CAMPBELL'S ESTATE.

No. 3144.    Decided May 27, 1918.    Rehearing Denied July 2, 1918.
(173 Pac., 688.)

1. EXECUTORS AND ADMINISTRATORS—ANCILLARY ADMINISTRATION—JURISDICTION. Courts have jurisdiction to hold assets in ancillary administration subject to the claims of creditors who have proved their claims in such administration, and distribute the surplus to legatees and devisees within such administration according to their respective interests in the surplus of the assets of the estate. (Page 495.)

2. EXECUTORS AND ADMINISTRATORS—ANCILLARY ADMINISTRATION—JURISDICTION. A legatee is as much entitled to recover and be protected as to the assets inside the state where ancillary administration is had as a general creditor, and court in such proceeding has jurisdiction to hold such assets until claims of legatees therein are satisfied. (Page 499.)

3. TRUSTS—DIVERSION OF TRUST FUNDS—RIGHT OF BENEFICIARIES. Where fund created by royalties received from mines of the estate has lost its identity as such by being wrongfully merged by executrix with that part of the assets denominated in will residue, one entitled to share in royalties under will would have an interest in the residue equal to what was due her from funds received as royalties. (Page 500.)

4. EXECUTORS AND ADMINISTRATORS—ANCILLARY ADMINISTRATION— JURISDICTION. Where domiciliary administration was pending in California, and ancillary administration in Utah and Nevada, and executrix diverted royalties received from mines of estate in California and Nevada by merging them with what was denominated by the will residue, the situs of the money received as royalties would be as clearly within Utah as California or Nevada, and court of Utah in which ancillary administration proceedings were pending would have jurisdiction, and petitioner, entitled to share in royalties, would have right, on petition for partial distribution, to have distributed in such court to her from the assets of the estate her portion of the money received from the royalties, the only persons interested in the assets situated in Utah or in the royalties being petitioner, the executrix, and her three children, practically all of the estate in Utah producing revenue being residue held in trust by executrix for the three children, the residue assets within jurisdiction of the court exceeding petitioner's claim by many thousand dollars, title of petitioner to mines not being in issue, and it being admitted that petitioner was entitled to the share claimed under the will. (Page 500.)

5. EXECUTORS AND ADMINISTRATORS—ANCILLARY ADMINISTRATION. It is the spirit and intent of the law and should be the policy of the courts of Utah to take care of just demands of its citizens before transferring, in ancillary administration proceedings, assets within its jurisdiction to other states. (Page 502.)

6. EXECUTORS AND ADMINISTRATORS—OBLIGATION TOWARDS LEGATEE— NATURE. Executrix having, contrary to will, diverted royalties received from mines of estate by merging them with residue, the obligation to reimburse petitioner, having a right to share in royalties, possesses all the essentials of a debt. (Page 504.)

7. TRUSTS—DUTIES OF TRUSTEE. The law is much more exacting and drastic in dealing with a trustee who is false to or has violated his trust by diverting trust funds from their true purpose than it is in regard to delinquencies of an ordinary debtor in failing to meet his contractual obligations. (Page 504.)

8. EXECUTORS AND ADMINISTRATORS—ANCILLARY ADMINISTRATION— JURISDICTION. Where petitioner, seeking partial distribution in ancillary administration proceedings in Utah, is not seeking to have

some interest in mines situated in other states adjudicated in order to establish her claim to a portion of money received by executrix as royalties from such mines, which under will were to be sold, it does not follow that only the courts of such other states have jurisdiction in view of Comp. Laws 1907, section 2788, providing that when a will directs the conversion of real estate into money such property and all its proceeds must be deemed personal property from the time of testator's death. (Page 505.)

9. EVIDENCE—LAW OF OTHER STATES—PRESUMPTION. There being no evidence to the contrary, the presumption is that the laws of California and Nevada, where administration proceedings are pending, are the same as the laws of Utah, where ancillary proceedings are pending.[1] (Page 506.)

10. COURTS—CONFLICTING JURISDICTION—CONSTRUCTION OF WILL. Contention that courts of Utah are precluded from construing a will because the courts of California, where domiciliary administration is had, may place a construction thereon different from that given it by the courts of Utah, is without merit. (Page 506.)

11. WILLS—CONSTRUCTION—WHAT LAW GOVERNS. The general rule is that the law of testator's domicile governs in the construction of his will disposing of personalty, and that courts exercising ancillary powers should be governed by this rule in construing wills unless a construction by the law of the testator's domicile contravenes the law of the state where the will is offered for probate. (Page 507.)

12. WILLS—CONSTRUCTION—WHAT LAW GOVERNS. Under Comp. Laws 1907, Section 2822, providing that, except as otherwise provided, the validity and interpretation of wills are governed, when relating to real property within the state, by the laws of the state, and when relating to personal property, by the laws of testator's domicile, wills, when relating to personalty, are governed by the law of the testator's domicile, and not by the interpretation given wills by courts of a sister state where domiciliary administration is had. (Page 507.)

13. WILLS—CONSTRUCTION—WHAT LAW GOVERNS. While the interpretation of a will by the courts of a state where domiciliary administration is had would be given much weight by the courts of a state where ancillary administration is pending, such interpretation would not be binding. (Page 507.)

14. EXECUTORS AND ADMINISTRATORS—POWER TO LEASE—WILL. Under will declaring that certain mines should be held at certain prices

[1] *American Oak Leather Co.* v. *Union Bank*, 9 Utah, 87, 33 Pac. 246; *Dignan* v. *Nelson*, 26 Utah, 186, 72 Pac. 936; *Stanford* v. *Gray*, 42 Utah, 228, 129 Pac. 423, Ann. Cas. 1916A, 989.

until a daughter should become twenty-one years old, and that "the money received after my death from each of said groups of mines shall be divided and paid over as follows," executrix would have no right to lease the mines and merge the royalties into what was denominated by the will residue, regardless of a subsequent item of the will authorizing executrix to lease any part of the estate without order of court.[2]    (Page 508.)

FRICK, C. J., and GIDEON, J., Dissenting.

Appeal from the District Court of Salt Lake County, Third District; *Hon. Wm. H. Bramel,* Judge.

In the matter of the estate of Allen G. Campbell, deceased.

From a judgment of the district court in favor of Mrs. Marietta T. Stanley for a partial distribution of the assets of said estate, Eleanor Campbell O'Kelly, executrix, appeals.

AFFIRMED.

*Stephens & Smith* and *James A. Stump* for appellant.

*Van Cott, Allison & Riter, B. R. Howell,* and *W. Q. Van Cott* for respondent Stanley.

McCARTY, J.

This appeal is taken from a judgment rendered in the district court of Salt Lake County in favor of Mrs. Marietta T. Stanley, respondent, for a partial distribution of the assets of the estate of Allen G. Campbell, who died testate June 16, 1902, at Riverside, Riverside County, Cal. Mr. Campbell's will, so far as material here, is as follows:

"I, Allen G. Campbell, whose residence is in Salt Lake City, Utah, though now temporarily living in California, hereby make this, my last will and testament. * * *

"Item 7. I hereby appoint my said wife, Eleanor, guardian of the persons and estates of my and her said three

---

[2] *In re Campbell,* 27 Utah, 362, 75 Pac. 851.

children; * * * such guardian to act without bond in any capacity whatsoever, and my said wife's receipt shall be a sufficient discharge to any person or court whatsoever, for anything that may be coming to any of my said children born to me by my said wife, Eleanor.

"Item 8.   I hereby direct that all my coal and iron mines situate in Iron County, Utah, shall be held for the price of $300,000.00; that all my lead, silver, and gold mines situate in Beaver County, Utah, shall be held for the price of $150,-000.00; that all my now patented lead, silver, gold, and copper mines situate in Yellow Pine Mining District, Lincoln County, Nevada, be held for the price of $200,000.00; and my Brick Consolidated gold mines situate in Vanderbilt mining district, San Bernardino County, California, be held for the price of $500,000.00, until my said daughter Caroline Neil Campbell shall arrive at the age of twenty-one years, or, in case of her death before that time, until she would have arrived at the age of twenty-one years if she had survived, unless said properties are sold before that time at the prices herein stipulated; and said properties, as groups, shall be sold separately or together, when the price herein mentioned, or more, can be obtained. * * *

(It is admitted that Caroline Neil Campbell will be twenty-one years of age in October, 1919.)

"Item 12.   * * * The money received after my death from each of said groups shall be divided and paid over as follows, to wit: Four-sixths of the net proceeds from each group shall be invested in United States government bonds for the benefit of and to be owned by my said three children by my wife, Eleanor; one-sixth shall be paid to my said son Charles Rufus, and one-sixth shall be paid to my nephew William B. Stanley, until $600,000.00 have been divided and paid over from the first sales of said properties. * * *

"Item 14.   All of my other property not herein specially devised and bequeathed, and all property which I may hereafter own or may be entitled to, I hereby designate as 'residue,' and I hereby devise and bequeath the same to my said wife, in trust, nevertheless, for my said three children, * * *

and my said wife is hereby authorized to manage the said property as guardian. * * *

"Item 21. I hereby appoint and nominate, as executrix of this will, my wife, Eleanor Campbell, and she is hereby authorized to act as executrix of this will without any bond whatever. * * *

"Item 22. I hereby authorize my said executrix * * * to lease any part of my estate without any order of court, on such terms as * * * she may think best, such lease, however, not to extend beyond the respective periods herein mentioned. * * *

"Witness my hand * * * at the place of my residence in Salt Lake City, Utah, this October 31, 1900.

                    "(Signed)  Allen G. Campbell."


The will was duly admitted to probate in the state of California on July 7, 1902. Eleanor Campbell, now Eleanor Campbell O'Kelly, was appointed executrix thereunder.

The deceased left property of large value in the states of California, Nevada, and Utah. On August 11, 1902, the will was admitted to probate in this state, and about the same time it was admitted to probate in the state of Nevada.

It is admitted that the administration in California is the domiciliary, and those in this state and in Nevada are ancillary, and that appellant, Eleanor Campbell O'Kelly, is the duly qualified and acting executrix in each of the states mentioned. Respondent, Marietta T. Stanley, is the widow of William B. Stanley, one of the devisees mentioned in the will, and succeeded to all the right, title, and interest of said William B. Stanley, in the estate of Allen G. Campbell, deceased, and her residence, since June 10, 1902, has been, and now is, in Salt Lake City, Utah. The trial court found and the correctness of the finding is not challenged or in any way questioned, that—

"the original inventory value of the estate of said decedent in Utah was about $365,000, and the value of the property of said decedent now in Utah is $180,000, and consists of real and personal property. On September 5, 1902, the proper court in Utah authorized a transfer of $70,000 in cash from the

decedent's estate in Utah to the estate of said deceased in California, and in addition there have been other transfers of property from Utah to California, aggregating a large sum in value, but, notwithstanding such transfers, the estate now in Utah is of a value of $180,000. The property so transferred from Utah to California and all property now in Utah belonging to said estate was situated in Utah at the time of the death of said decedent. * * * The said executrix at no time was directed by the said court to remove all personal property from Utah to California. * * * On or about July 31, 1910, said executrix was ordered and directed by this court not to transfer any money or other property of said estate from Utah without application therefor and the giving of at least fifteen days' notice to all persons interested in said estate. * * * In addition to the other cash on hand in Utah, there is over $2,400 on hand in Utah, as shown by the last account of said executrix, dated May 8, 1917. * * * The said executrix, instead of holding said groups of mines respectively as directed in said item 8 of said will, leased, without authority and without order of any court, and wrongfully, from about December, 1912, to December 31, 1915, for certain royalties, said Brick Consolidated gold mines (situate in California), * * * and the lessees under said lease took tailings, belonging to said group and paid said executrix'' royalties in the sum of $2,725. That said executrix, without authority, and without any order of court, leased the group of mines situated in Nevada, and ''received net royalties therefrom amounting to $7,244.88. The lessees under said leases took ore in place from said mines and paid said executrix the said royalties on the same. * * * Said executrix made all of said leases without informing said petitioner, or without said petitioner knowing of the same, until she accidentally discovered it in the fall of 1914, and up to this time said petitioner has endeavored to adjust the matter amicably with said executrix. * * * Said petitioner has requested said executrix to pay her the said one-sixth of said $9,969.88, but said executrix has refused to do so. * * * Said executrix claims that she is holding said groups of mines as directed in item 8 of said will when she leases the same on royalties and gives the lessees the right to extract

ore in place therefrom. Said executrix further claims that no part of such royalties belongs to this petitioner or any other of said legatees as specified in said will, but that all of such royalties should go and is put by her into the residue of said estate, which residue by sa'd will she claims belongs to her said three children. * * * The said estate has regularly employed attorneys in Utah who are familiar with said estate in Utah, and the point involved in the petition may as economically be litigated by said executrix in Utah as in California. Said petitioner has attorneys in Utah who are familiar with said estate in Utah, but she has no such attorneys in California, and it will cause said petitioner much greater expense to litigate said petition in California than in Utah, and will result in every way in greater inconvenience and expense to this petitioner. * * * Said estate in each of said three states is not at all indebted; there are no creditors in either of said states, and the partial distribution prayed for herein may be made without any loss or disadvantage to any person. At the most, a bond of not over one dollar should be required from said petitioner for partial distribution herein, and therefore it is unnecessary to require any bond for partial distribution.''

The case, as presented by this appeal, stripped of all verbiage and redundant matter, presents, as stated by counsel for Mrs. Stanley (respondent) in their brief, the question: ''Have the courts of this state jurisdiction over the property of a decedent inside of this state?'' Counsel for appellant, answering this question, say in their brief: ''There is no question but that the courts of Utah have jurisdiction over property within the state of Utah.'' This being conceded, it ought to end the controversy respecting the jurisdiction of the district court to enter the judgment from which this appeal is taken. Counsel, however, with much earnestness, vigorously assail the judgment on the ground that the court was without jurisdiction to render it. In their brief they say:

''Letters of administration have no extraterritorial operation, and do not, as a matter of right, confer authority over

personal assets found without the jurisdiction from which the grant is derived.''

This is conceded. Counsel, nevertheless, have devoted much space in their brief to the discussion of the question. And practically all of the cases cited by them declare this rule of elementary law, but the cases have no material bearing on any controverted question in this case. It would therefore avail nothing to cite, review or discuss them here. In their discussion of the question they seem to take the position that if the domiciliary administration were in this state the court would have jurisdiction to render the judgment, but that, since the administration in this state is ancillary, the court acted without jurisdiction. While it is conceded that in an ancillary administration the court may subject assets within the state to satisfy the claims of creditors, it, nevertheless, may not distribute assets within its jurisdiction payable to legatees and distributees. This, in view of the undisputed facts in the case at bar, is the logic of their argument when reduced to its last analysis. We shall consider the two propositions together.

The authorities hold, in fact it is settled law, that courts have jurisdiction to hold assets in ancillary administration subjects to the claims of creditors who have proved their claims in the ancillary administration, and to distribute the surplus to legatees and distributees within such administration according to their respective interests in the surplus assets of the estate. In *Baker* v. *Baker, Eccles & Co.*, 242 U. S. 401, 37 Sup. Ct. 154, 61 L. Ed. 386, the court said:

''No state need allow property of a decedent to be taken without its borders until debts due to its own citizens have been satisfied; and there is nothing in the Constitution of the United States, aside from the full faith and credit clause, to prevent a state from giving a like protection to its own citizens *or residents who are interested in the surplus after payments of debts.*'' (Italics ours.)

In *Re Lathrop Estate*, 165 Cal. 243, 131 Pac. 752, California was the jurisdiction of ancillary administration, New York that of the domiciliary administration. In that case the

deceased left more than one-third of his estate to charity. The executor in California petitioned for an order remitting assets for distribution to the New York executors. An heir in California objected because the California statute prohibits a bequest to charity of more than one-third of an estate. The court overruled the objection and distributed the whole estate to the domiciliary executors. Section 1667, Code Civ. Proc. of that state, provides that where "it is necessary, in order that the estate, or any part thereof, may be distributed according to the will, * * * that the estate in this state should be delivered to the executor or administrator in the state" of his "residence, the court may order such delivery to be made." The Supreme Court of California, in the course of an able and well-considered opinion, observed: "This will admittedly made a valid disposition of the property belonging to his (decedent's) estate under the laws of the state of New York, and was executed in accordance with those laws, as well as with the laws of this state." The court, nevertheless, reversed the judgment, holding that the section of the California Code referred to, providing for the delivery of property to the domiciliary administration, "is not a mandate upon the court, but vests in it merely a discretion so to do," and based the reversal on the ground that property in such cases should not be delivered to other jurisdictions to be distributed contrary to the laws of California. It will be observed that the California court in that case held (1) that courts of ancillary jurisdiction have power to distribute property within their boundaries; (2) that the rule of distribution, as fixed by the domiciliary administration, is not binding on the courts of ancillary administration.

In the case of *Harvey* v. *Richards*, Fed. Cas. No. 6184, Mr. Justice Story, in the course of a well-considered opinion, said:

"Why should not legatees and distributees be entitled to recover out of the assets here as well as creditors? It is true that legatees claim by the bounty of the testator; but it is a legal right, as fixed and vested as the right of the creditors. And as to distributees the case is still stronger; for that rests not on the bounty of the intestate, but on the law of the land, which, at the same time, enables the creditor to receive his debt out of the assets, and the next of kin to claim the residue. If

it be said that it belongs to the public policy of a country to sustain the claims for debts due to its citizens, it seems to me no less to belong to that policy to sustain any other claims of its citizens, which are founded in justice and law.''

And again:

''I confess myself unable to admit the distinction in favor of creditors without admitting, at the same time, the like rights in favor of legatees and heirs. Nor have I been able to find that distinction sustained or adverted to in any other authorities.''

And again:

''The property is here, the parties are here, and the rule of distribution is fixed. What reason, then, exists why the court should not proceed to decree according to the rights of the parties? Why should it send our own citizens to a foreign tribunal to seek that justice, which it is in its own power to administer without injustice to any other person? I say without injustice, because it may be admitted that a court of equity ought not to be the instrument of injustice, and that, if in the given case such would be the effect. of its interposition, it ought to withhold its arm. This, however, would be an objection, not to the general authority, but to the exercise of it under particular circumstances.''

And again:

''I have no objection to the use of the terms principal and auxiliary, as indicating a distinction in fact as to the objects of the different administrations; but we should guard ourselves against the conclusion that therefore there is a distinction in law as to the rights of parties. There is no magic in words. Each of these administrations may be properly considered as a principal one, with reference to the limits of its exclusive authority; and each might, under circumstances, justly be deemed an auxiliary administration. * * * Whether distribution ought or ought not to be decreed should depend upon the circumstances of each case. * * * No universal rule ought to be laid down on the subject, or at least, that the rule should be flexible, and depend for its application upon the equity of the particular case presented to the court.''

The learned author and jurist in the course of the foregoing opinion cites with approval one of the early English decisions (*Bowaman* v. *Reeve*, Finch, Prec. 577). Referring to that case, he said:

''It was a suit brought by specific legatees of a person domiciled in Holland against the executor and residuary legatee, who had taken out

letters of administration, to recover satisfaction out of such residuum for the value of their specific legacies, which had been taken possession of by the creditors in Holland in payment of their debts; and the chancellor decreed satisfaction accordingly, and did not remit the legatees for relief to the domestic forum.''

The case of *Bowaman* v. *Reeve* and the case at bar are identical in principle. We have quoted somewhat copiously from *Harvey* v. *Richards,* because it seems to us that it is a complete answer to, and meets every objection urged against the jurisdiction of the trial court to render the judgment under consideration.

In *Moses* v. *Hart,* 25 Grat. (Va.) 795, the court said:

"If the court of the ancillary administrator consents to a transmission of the assets abroad, it is a mere matter of courtesy, and not because there is any obligation to do so. That courtesy ought never to be exercised to the injury or inconvenience of domestic claimants, whether they be creditors, legatees, or distributees. The one has as much right to the protection of the government as the other. It is not a just principle to subject our own citizens to the expense, trouble, and hazard of redress in foreign tribunals when our own courts are entirely competent to afford it.''

In *Porter* v. *Estate of Heydock,* 6 Vt. 374, the court said:

"Although the general practice may be to remit the fund for distribution abroad [referring to the domiciliary distribution], still this will never be done under circumstances where, instead of facilitating a final adjustment, and securing the rights of all, it would tend to embarrass or prevent that adjustment, and jeopardize the rights of the parties.''

The following authorities also support the doctrine contended for by respondent on this point: Story's Conflict of Laws, p. 425; 18 Cyc. 1228-1236, and cases cited; Wœrner, Am. Law of Admin. sec. 167; *State* v. *District Court,* 41 Mont. 357, 109 Pac. 438; *In re Welles Estate,* 161 Pa. 218, 28 Atl. 1116, 1117; *In Matter of Hughes,* 95 N. Y. 55; *Carr* v. *Lowe's Executors,* 7 Heisk. (Tenn.) 84; *Parsons* v. *Lyman,* 20 N. Y. 103; *Parker's Appeal,* 61 Pa. 478; *Rader* v. *Stubbelfield,* 43 Wash. 334, 86 Pac. 560, 10 Ann. Cas. 20; *In re Kelley's Estate,* 122 Cal. 379, 55 Pac. 136.

The cases cited by respondent are overwhelmingly to the effect that the ancillary courts are not only justified in hold-

ing, but they should hold, assets within their jurisdiction until the claims of creditors and legatees therein are satisfied. The contention that a general creditor would be entitled to recover from the estate, but that Mrs. Stanley, a legatee, is not entitled, is wholly without merit. The law is settled, as stated in the above quotations, that a legatee is as much entitled to recover, and to be protected as to assets, inside the state where administration is had, as a general creditor. In the case at bar it is manifest that, if Mrs. Stanley is denied relief in the courts of this state, her rights will not only be jeopardized, but will, in effect, be confiscated. She would be compelled to maintain two suits, one in Nevada for distribution of her portion of the money received as royalties from the mines in that state, and one in California for money received as royalties from the mines there. The great expense, considering the amount involved, she would be compelled to incur in going into these states, employing attorneys in each, and litigating in two suits the questions here presented, would probably equal, if it did not exceed, the amount involved. This case illustrates the wisdom of, and the necessity for, ancillary administration. It is manifest from the record that it is the settled and avowed purpose of the executrix to resort to and employ every means at her command to prevent Mrs. Stanley from sharing in any part of the assets of this large estate, valued at hundreds of thousands of dollars. The executrix, without an order of court, clandestinely as to Mrs. Stanley, and in utter disregard of the wishes of her deceased husband, as expressed by the plain provisions of the will, authorized and permitted, and is now permitting, parties to exploit the mining claims in question, and to extract and remove therefrom the tailings and the ore in place which represent, as shown by the record, the only element of value in the property. One of the reasons given by the executrix in her brief for desiring that the questions here involved be determined by the courts of California and Nevada is that the courts of those states may (and probably will, so she claims) give certain provisions of the will a construction which we think would be unreasonable, if not absolutely vicious, that would render nugatory and of no

2

effect other provisions of the document, and thereby overturn and defeat a bequest therein made and provided for, under which Mrs. Stanley is clearly entitled to share in the money received as royalties from the mines in question. The mere suggestion of such an astounding proposition is, in the opinion of the writer, a reflection on the intelligence, learning, and ability of the courts of sister states that borders on a slander against their integrity. While the courts of those states would not, if called upon to construe the will, be bound by the construction given it by the courts of this state, they nevertheless would be governed by well-settled elementary rules, and give it a fair and reasonable construction—a construction, if possible, that would give force and effect to all of its provisions, so that they would form one consistent whole and operate together. 1 Schouler on Wills (5th Ed.) section 468; 30 A. & E. Ency. Law (2d Ed.) p. 663; *In re Heywood's Estate*, 148 Cal. 184, 82 Pac. 755.

As we have stated, the principal ground upon which appellant relies for a reversal of the judgment is that the royalties paid to and received by the executrix from the mining claims mentioned in item eight of the will "should go and are put by her into the residue belonging to her     3, 4 said three children." The fund, therefore, if there were one, created by the royalties, has lost its identity as such by being thus wrongfully merged with that part of the assets "designated residue" in the will. And these particular assets have been increased in the sum equal to the amount of the royalties received, namely, $9,969.88. Mrs. Stanley, therefore, has an interest in the residue equal to the sum of money that was due her from the funds received as royalties. It is admitted that a considerable portion of the assets designated residue in the will are situated in Utah and within the jurisdiction of the district court in which the judgment for partial distribution was rendered. And the only inference permissible from the record is that these residue assets within the state exceed the amount of the judgment many thousands of dollars. The royalties having gone into the coffers of the estate, and, by the act of the executrix, as shown by the pleadings and as found by the court, become merged with

and a part of the residue, the situs of the money received as royalties is as clearly within the state of Utah as it is in California or Nevada. It therefore necessarily follows that Mrs. Stanley is entitled to have distributed to her from the assets of the estate a sum equal to her portion of the money received as royalties, which sum the district court found and adjudged to be, with interest, $2,082.52.

We do not wish to be understood, from what is here said, as holding, or intimating that if the executrix had not merged the money received as royalties with the assets designated as residue, there would even then be any question as to the validity of the judgment under consideration.

Assuming, for the sake of argument, that the money received as royalties and merged with the residue is, in contemplation of law, in California, it nevertheless does not follow that the district court was without jurisdiction. The record shows that all of the property in this state belonging to the estate except that mentioned in item eight of the will was bequeathed and devised to the executrix and the three children, and it also clearly shows that the executrix has purchased the interest of Charles Rufus Campbell; therefore the executrix, her three children, and Mrs. Stanley are the only persons interested in the assets of the estate situated in this state, and are the only persons interested in the money received as royalties. The record further shows that much, if not practically all, of the assets in Utah producing revenue is residue and is held in trust by the executrix for her three children. Now, $1,661.65 of the trust funds belong to Mrs. Stanley. The estate, therefore, has that amount of her money which, with interest, amounts to $2,082.52, as found by the court. The district court in the exercise of a sound discretion and its equity powers, directed that the money belonging to Mrs. Stanley and held in trust by appellant, as executrix, be paid to her. Now what possible difference can it make to the estate, or to any person interested therein, whether Mrs. Stanley is paid out of the portion of the trust fund in California or out of the portion in Utah? This question will admit of but one answer, and that is that it cannot make any difference to any person except Mrs. Stanley. In other words,

to pay Mrs. Stanley out of the assets in Utah would not, and could not, prejudicially affect the estate or any one interested therein.  To further illustrate: To pay Mrs. Stanley $2,082.52 out of the assets in Utah means that the amount transferred to California will be $2,082.52 less than it otherwise would be. To transfer all of the Utah assets to California and to pay Mrs. Stanley there means that the net remaining assets in California will be just the same amount as though she had been paid in Utah.  The record shows that when the estate in Utah is closed hundreds of thousands of dollars will either be transferred to the executrix in California or will be distributed in this state.  It would be a parody on the law to transfer from this state, or to distribute in this state, hundreds of thousands of dollars, and at the same time force Mrs. Stanley to go to two states to recover at great expense a sum of money due her which the executrix merged with the residue, a large amount of which is in Utah.

It is the spirit and intent of the law, and should be the object and policy of courts of this state, to take care of the just demands and credits of our own citizens before transferring money to other states in proceedings of this kind.  One of the primary reasons for ancillary administration is to enable courts to do this.

Counsel for the executrix in their printed brief say:

"In Utah there is a half section of land particularly devised to minor children. * * * Respondent proposes to levy upon this property and take it away from these children without their consent for the purpose of satisfying her alleged claim."

And they further assert that—

"property which is vested in other devisees and legatees (the three children herein mentioned) would be seized to satisfy the payment of the $2,000, and sold perhaps at a great sacrifice."

This visionary and speculative conclusion of counsel respecting the probable, or even possible, effect of the enforcement of the judgment in question on the $180,000 of the assets within the jurisdiction of the trial court is groundless.  The court found, and the finding is not assailed, that, "in addi-

tion to other cash on hand, there is $2,400 on hand in Utah.'' And the record shows that this $2,400 is a part of the residue fund. The record also shows that the court made an order that no part of ''any money or property of said estate'' can be transferred from Utah without an order of court. It is therefore established by the record, beyond any question of a doubt, that the enforcement of the judgment would not, and could not, result in any loss or sacrifice to the estate, and would not, and could not, prejudice the rights of any one interested therein. On the contrary, to deny Mrs. Stanley the relief in this action to which we think the record clearly shows she is legally and equitably entitled, and compel her to engage in expensive, vexatious, and interminable litigation in the states of California and Nevada in order to protect. and enforce her rights in the estate, would not only result in a useless waste of the funds and assets of the estate, but would, in effect, as herein stated, result in a confiscation of her interest in the estate. The printed brief of the executrix shows that she, evidently prompted by greed and selfishness rather than a desire to faithfully discharge her trust, intends to employ every means at her command to defraud Mrs. Stanley of her small interest in this large estate valued at hundreds of thousands of dollars. It is therefore idle for counsel to contend that the interests of the parties to this proceeding would be better subserved by compelling Mrs. Stanley to go to California and Nevada and there litigate in two suits the questions settled and determined, and correctly so, by the judgment under consideration.

It is suggested that the district court was without jurisdiction to render the judgment because the royalties were received from mines situated in California and Nevada. In other words, it is suggested that money received as royalties from mines belonging to decedent can be distributed by the courts only of the respective states in which the mines are situated, regardless of where the royalties may be or the disposition the executrix may have made of them. If such were the rule, the courts of one state could not legally make any order in probate proceedings respecting money—assets—within the state received as royalties from mines or as rents from

other real property belonging to decedent and situated in another state, except to transfer such money to the state from which it was obtained to be there distributed.  To further illustrate the fallacy of this contention: Suppose the executrix should, as she has done in the case at bar, clandestinely and without any order of court lease or otherwise dispose of the ores in place of the mines mentioned in item eight of the will, situate in this state, and receive large sums of money therefor in California, Mrs. Stanley would be without any remedy whatever.  She could not obtain an order of distribution from the Utah courts because the funds were received and are being held in California, and she could not obtain distribution in California because the money was received from mines situated in Utah.  A mere statement of the proposition clearly shows that it is unsound, impractical, and contrary to every known rule of law and principle of equity applicable to probate procedure.

It is conceded that, if this obligation grew out of contractual relations existing between the estate and Mrs. Stanley, there would be no question respecting the validity of the judgment.

The executrix having refused and failed to comply with the request of her deceased husband in the distribution of the money received as royalties, as clearly expressed in the will, and having diverted it to a purpose not contemplated by the will, by merging it with the residue, the obligation now possesses all of the essentials of a debt.  The fact that Mrs. Stanley's rights are determined, protected, and enforced by the application of equitable principles and rules of equitable procedure, rather than by strict technical legal rules, does not change the character of the obligation in that regard.

Furthermore, obligations arising from purely contractual relations are no more sacred in the eyes of the law than are those growing out of fiduciary relations between a trustee and the castui que trust.

In fact, the law is much more exacting and drastic in dealing with a trustee who is false to or has violated his trust by diverting trust funds from their true purpose, and making a disposition not authorized by the terms

of the trust, as was done by the executrix in this case, than it is in regard to the delinquencies of an ordinary debtor in failing to meet his contractual obligations.

In 1 Beach, Trusts and Trustees, section 188, the author says:

"All persons acting as trustees or agents in the settlement of estates are held by courts of equity to a very rigid accountability in the discharge of their fiduciary obligations."

Suppose, for example, the executrix should receive in California sums of money—proceeds—from the mines mentioned in item eight of the will that are situated in Utah, and merge the same with the residue or other assets specifically bequeathed to the three minor children, we know of no rule of law or principle of equity that would prevent the courts of this state from making an order, on proper application therefor, that Mrs. Stanley be paid out of the residue or other assets in this state specifically bequeathed to the three minor children.

Counsel for appellant in their printed brief say that Mrs. Stanley's right to receive anything must grow out of the fact that appellant has received royalties in California and Nevada from certain mining properties mentioned in item eight of the will, and that "the jurisdiction of the California and Nevada courts attached to the mining properties from which the royalties were received, and it necessarily follows that the same jurisdiction attached to the money and royalties received as assets of the estate." Again they say: "Respondent's right to receive these royalties is challenged, and the matter can, at most, only be determined in the jurisdictions in which the properties from which the royalties were received are situated." And that "this question involves a construction of the will, not by the courts of the state of Utah, but by the courts of the states where the mining property from which the royalties were received are situated."

If Mrs. Stanley based her claim on some interest claimed by her in the mining properties from which the royalties were received, as the argument of counsel seems to imply, and was before the court seeking to have her right to, or

interest in, the property adjudicated and quieted in order to establish her claim to a portion of the money received as royalties, the contention of counsel that the courts of this state are powerless to grant her relief would be unanswerable and would prevail. But that is not the case. The title to the mining properties is not involved, nor is it in any sense an issue in this case. Furthermore, we have a statute (section 2788, Comp. Laws Utah 1907) which provides: "When a will directs the conversion of real property into money, such property, and all its proceeds, must be deemed personal property from the time of the testator's death."

There being no evidence to the contrary, the presumption is that the laws of California and Nevada on this point are the same as the law of this state. *American Oak Leather Co.* v. *Union Bank,* 9 Utah, 87, 33 Pac. 246; *Dignan* v. *Nelson,* 26 Utah, 186, 72 Pac. 936; *Stanford* v. *Gray,* 42 Utah, 228, 129 Pac. 423, Ann. Cas. 1916A, 989; Sutherland, Stat. Const. section 184.

Under the plain provisions of the will, Mrs. Stanley, as we have pointed out, had a one-sixth interest in the money received as royalties from the mining properties until the executrix, as stated, in utter disregard of the desire and intention of her deceased husband, and in violation of her trust, diverted it from the purpose designated in the will, and merged it with assets of the estate specifically bequeathed and devised to the three children mentioned, which assets are held in trust by the executrix for the children. Mrs. Stanley, therefore, has an interest in these assets, of which a large portion is in this state, equal to the sum of money that she was entitled to receive from the money paid as royalties.

The contention that the courts of this state are precluded from construing the will because the courts of California, where the domiciliary administration is had, may place a construction thereon different from that given it by the courts of this state, is wholly without merit. No authorities are cited, nor do we think any can be found, that support counsel's contention in that regard.

The general rule, as declared by practically all of the authorities on the subject, is that the law of the testa-

tor's domicile governs in the construction of his will [11, 12] disposing of personalty, and that courts exercising ancillary powers should be governed by this rule in construing wills, unless a construction by the law of the testator's domicile contravenes the law of the state where the will is offered for probate. 40 Cyc. 1382; Thompson on Wills, section 49; Alexander, Comm. on Wills, vol. 1, section 273; Brown, Jurisdiction, section 136. Furthermore, we have a statute declaratory of this general rule (section 2822, Comp. Laws 1907), which is as follows:

"Except as otherwise provided, the validity and interpretation of wills are governed, when relating to real property within this state, by the law of this state; when relating to personal property, by the law of the testator's domicile."

It will be noticed that this section in plain and unmistakable terms provides that the "interpretation" of wills shall be governed, when relating to personal property, by the law of the testator's domicile, and not, as counsel's argument seems to imply, by the interpretation given wills by the courts of a sister state where the domiciliary administration is had.

While the interpretation of a will under these circumstances by the courts of some other state should, and would, be given much weight by the courts of this state, such interpretation nevertheless would not be binding. This [13] however, is beside the question. There is nothing in the record that tends to show, or that even suggests, that the statutes of California, or the laws as declared by the courts of that state on this subject, are different from the laws of this state. And as we have said, in the absence of any showing to the contrary, the legal presumption is that the rule in California is the same as it is in this state.

In 40 Cyc. 1384, it is said:

"In order that a law of one jurisdiction may govern in the construction of a will in another jurisdiction it must be proved, and in the absence of such proof the law of the forum will govern."

The claim made by appellant that item twenty-two of the will permits and authorizes her to lease the mines, and that the proceeds—royalties—derived therefrom are rents

and profits, as those terms are usually understood and applied to transactions between landlord and tenant involving the leasing of real property for occupation and use, and that the royalties were properly merged with the residue and are being held in conformity with the provisions of the will for her three children, is untenable.

The trial court found, and the finding is not assailed, that "Allen G. Campbell, for many years prior to his death, was an experienced mining man, and well acquainted with all of his mining properties, and the property mentioned in item eight of his said will had and has no substantial value except for mining purposes." It is therefore determined that the value of the mines consists of the ore and tailings only contained therein. Item eight of the will declares in part that the mines in question "shall be held" at certain prices until Caroline Neil Campbell shall arrive at the age of twenty-one years. Item twelve declares, in part, that "the money received after my death from each of said groups of mines shall be divided and paid over as follows, to wit. * * * one-sixth shall be paid to my nephew William B. Stanley." As stated by counsel for Mrs. Stanley in their brief, "when tailings and ore are taken from the mining property it is not being held; it is being consumed."

In 3 Lindley on Mines (3d Ed.) section 861, p. 2135, the author says:

"We have already seen that mineral in place is land; that when it is taken therefrom and changed into personal property real estate has to that extent been destroyed. It is obvious that the normal relation of landlord and tenant does not contemplate destruction of the estate by the tenant, and that such destruction cannot properly be called 'use.' It is equally plain that the so-called 'rent' in a mining lease is something more than a return for the possession and use of real property. While the contract is in name a lease, it amounts in fact to a sale, and if it grant the right to take all the mineral, it is a sale of real estate—the lessee's interest is a fee in the mineral and the lessor's so-called rent is purchase money for real estate."

Assuming, but not conceding, that the extracting of ore in place and removing it and the tailings from the mines under the lease was in no sense a sale of any part of the property,

appellant still could not successfully maintain that the royalties received is residue. Item twelve of the will, as herein stated, declares that "the money received.* * * from each of said groups shall be divided. * * * One-sixth shall be paid to * * * William B. Stanley until six hundred thousand dollars shall have been divided," etc. No provision is made in the will that any part of the $600,000 mentioned in item twelve shall or may be deemed residue under any circumstances.

Moreover, this court, in the case of *In re Campbell,* 27 Utah, 362, 75 Pac. 851, construed item twelve as well as other provisions of the will. The construction there placed on item twelve is clearly against the contention here made by counsel for the executrix. And it is not made to appear that the courts of California have given the provision, or, for that matter, any provision, of the will a construction different from that given it by this court. Therefore the legal presumption, as stated, is that the rule of construction respecting the points here involved is the same in California as it is in this state.

This case may be summarized as follows: Certain bequests are made in item eight of the will to the executor in trust for her three children, to Charles Rufus Campbell, and to Mrs. Stanley. These bequests are to be paid out of the proceeds of the property, mining claims, therein mentioned. The property is situated in California, Nevada, and Utah. The executrix has purchased the interests of Charles Rufus Campbell. Therefore the only parties interested in the proceeds are the executrix, her three children, and Mrs. Stanley, who is, and for twelve years has been, a resident of this state. The executrix has received money as royalties from the mines in California and Nevada which she has merged with the assets designated in the will as residue. The executrix by thus breaching her trust has placed in and merged with the residue, $9,969.88, that does not belong there. Under what process of reasoning, may we ask, can it be held that this money, which was wrongfully diverted from the purpose designated in the will and merged with the residue, belongs to decedent's three children? Under the will, as construed in *Re Campbell,* supra, $1,661.65 of this money belonged to Mrs. Stanley. By an examination of the will it will be seen that the bulk of the

assets of the estate designated as residue is situated in Utah. Therefore, in contemplation of law, the $9,969.88 received as royalties and merged—mingled—with the residue is as much in Utah as it is in California or Nevada. The order of the trial court distributing to Mrs. Stanley her portion of the royalties that have gone into the residue does not take any property whatever from the "other legatees and devisees" as suggested by counsel. It takes from that fund money only that does not, and never did, belong there. We again in-voke the rule announced in *Harvey* v. *Richards,* supra, where-in it is said:

"The property is here, the parties are here, and the rule of distribu-tion is fixed. [In re Campbell, supra.] What reason, therefore, exists why the court should not proceed to decree according to the rights of the parties? Why should it send our citizens to a foreign tribunal to seek there justice which it is in its power to administer without injustice to any other person?"

It is suggested by counsel that that case is distinguishable from the case at bar. The distinction, if there be a discerni-ble one where there is no difference in principle, consists in the case at bar being a much stronger case for the application of the doctrine contended for by respondent than is the case of *Harvey* v. *Richards.* In that case the domiciliary admin-istration was in Calcutta. The executor appointed by the will of the testator resided in Calcutta. Richards was appointed administrator to collect assets in Massachusetts, none of which were necessary to satisfy either debts or legacies in Calcutta. The plaintiff in that case, a Rhode Island citizen, entitled to share in the estate, sought a distribution of assets in Massa-chusetts. The question thus presented to the court was "whether the defendant should be ordered to distribute the effects in his hands among the next of kin in this country or should send them to Calcutta to be distributed by the execu-tor there." It will be noticed in that case that the plaintiff was not a citizen or resident of Massachusetts, where the an-cillary administration was had. In the case at bar Mrs. Stanley is a resident of this state, the bulk of the residue in which, because of the act of the executrix in violation of her

trust, Mrs. Stanley has an interest to the extent of her claim, is here, and the rule of distribution is fixed. *In re Campbell,* supra. And the executrix in California and in Utah is one and the same person.

The Supreme Court of California, in the case of *In re Campbell's Estate,* 149 Cal. 712, 87 Pac. 573, a case in which the validity of certain provisions of this will was involved, summarized what there purports to be the questions presented to, and the conclusions arrived at by, this court in the case of *In re Campbell's Estate,* 27 Utah, 361, 75 Pac. 851, as follows:

"The will was admitted to probate in the state of Utah, and ancillary administration was had there through an administrator with the will annexed, appointed by the courts of that state, in which a large part of the land involved in the controversy is situated. The administrator with the will annexed reported to the courts of that state a sale of some of the property there situated, made by him without any order of the court, and at a price much less than that fixed by the will, and, of course, within the prohibited period. By regular proceedings for that purpose in the courts of that state, the sale was confirmed."

The important and controlling question decided by this court in that case is stated in the opinion as follows:

"The testator sold one of the aforesaid groups [referring to the mines mentioned in item eight of the will] for $126,000, and there was paid to him $83,494.28. Since his death the balance of the purchase price of said group, $42,505.72, has been paid to the said William B. Stanley, as administrator, and which he now has in his possession. Charles Rufus Campbell, the son of the testator, * * * filed a petition in the district court of Salt Lake county, * * * and prayed for an order directing the $42,595.72 so paid to the administrator, less the inheritance tax due thereon, to be distributed to the beneficiaries thereof in the proportions directed by the will. The executrix, Eleanor Campbell, in her own behalf, and as guardian of her minor children, answered, denying that under the provisions of the will the said sum of $42,505.72 was subject to distribution until the said Caroline Neil Campbell became of the age of twenty-one years, or, in case of her death, until she would have reached that age. William B. Stanlay, the administrator, answered, and admitted the allegations of the petition, and joined with the petitioner in praying for the distribution of said sum. A distribution in accordance with the prayer of the petition was granted."

The foregoing quotation from the decision of this court clearly shows that the money distributed was the balance of

the purchase price of mines sold by the testator, and not by William B. Stanley, as administrator, as stated in the California decision. The California court in the course of its opinion clearly indicates that it does not agree with the decision of this court in the In re Campbell Case mentioned. This is not at all strange or surprising, viewing the Utah decision as that court does. It would tax to the utmost the ingenuity and mental capacity of the most astute, clever, and versatile lawyer to designedly make a more incorrect and misleading statement respecting the questions involved and decided in an opinion than the California court inadvertently made concerning the questions decided by this court in the In re Campbell's Estate Case. The California court does not give the title of the Utah case nor the volume of the report in which it is published. It, however, is the only case except the case at bar that has been before this court in which the Campbell estate was in any way involved. The California case referred to does not show that precision, care, and deliberation on the part of the court that characterizes the decisions of that court generally from the earliest period of its history down to the present in its review and discussion of the decisions of other states.

We think it probable that if the California court had had a correct understanding of the questions presented to and decided by this court in the In re Campbell's Estate Case it would have approved of the rules of law therein enunciated.

Mr. Justice GIDEON has filed an opinion in which he dissents from the reasons expressed and the conclusions reached in this opinion.

It is axiomatic that a judicial opinion cannot be more correct and sound than is the premise on which it is based. Mr. Justice GIDEON'S opinion is grounded on a wrong and unsound premise, which premise, to wit, the alleged lack of power or jurisdiction of the trial court to render the judgment under consideration, rests on propositions some of which wholly fail to, and others but partially, reflect the questions presented by this appeal, and on propositions that are antagonistic to and inconsistent with each other. The learned justice says:

"The controlling questions in this case, * * * as disclosed

by the record and contained in the opinion of Mr. Justice McCarty, are: * * * (1) Can the Utah court deprive the Cali- fornia and Nevada courts of the right to construe the pro- visions of a will in their jurisdictions, and as to real estate or the proceeds of real estate within their jurisdictions? (2) Can respondent, under an order of the Utah court, seize prop- erty in Utah which belongs to other legatees for the purpose of paying an alleged claim and legacy growing out of the re- ceipt of mining royalties in other states?''

It will be seen by a casual examination of the record and this opinion that the questions propounded by Mr. Justice GIDEON in his first proposition are not involved in the case. No claim is made that the courts of this state ''can deprive the California and Nevada courts of the right to construe the will,'' etc. Nor is there an expression in this opinion that suggests that the Utah courts have any such power. There are, however, numerous statements in the opinion which clearly show that we hold to the contrary. In fact, later on in the dissenting opinion it is said:

''It is conceded by counsel for respondent that the courts of our state will not attempt to administer or distribute the assets of an estate located in another state.''

In other words, we are here told that it is conceded that one of the ''controlling questions'' that is propounded in the first proposition contained in the dissenting opinion is not in the case at all, which is correct.

Mr. Justice GIDEON further says:

''It seems to me that this court must, in order to determine the rights of the respondent to the moneys in question, deter- mine her rights in the lands from which the royalties are ob- tained.''

As we have stated, the title to the lands is not in issue. Neither is Mrs. Stanley's right to receive one-sixth of the money received from the mines in question a controverted question. In paragraph four of the petition it is alleged that:

''The said decedent, in item twelve of said will, directed that if any money should be received after his death from any of said groups of mines, there should be divided and paid over out of the same four-sixths of the net proceeds of each group

to the said three children of the said decedent and Eleanor Campbell O'Kelly, above mentioned; that one-sixth should be paid to the said decedent's son, Charles Rufus Campbell, and that one-sixth should be paid to the said William B. Stanley, until $600,000 should have been divided and paid over from the first sales of said groups.''

Paragraph 3 of the answer of the executrix is as follows:

''Admits the allegations contained in paragraph 4 of said petition.''

Mrs. Stanley's right to one-sixth of the moneys received from the mines mentioned in item eight of the will being admitted by the answer, how it can be seriously contended that before the court can enforce this admitted and conceded right of hers it must first determine her right in the land from which the money was obtained, which is not directly, indirectly or remotely an issue in the case, is to the writer incomprehensible.

Mr. Justice GIDEON also says:

''It is * * * conceded that the courts of this state in the distribution of personal property are controlled by the construction or interpretation of the will made by the courts of the domiciliary administration. At the oral argument of this case counsel conceded these two propositions to be elementary.''

The learned justice is in error. This, we think, clearly appears from the following excerpts from the brief of counsel for respondent, viz.:

''Appellant urges that the Utah courts cannot control the courts of California and Nevada, which we admit; and vice versa, those courts cannot control the Utah courts in the distribution of property within this state.''

And again:

''Appellant states that, if a decedent dies intestate, his personal property in the ancillary jurisdiction is to be distributed according to the law of the state of his domicile. This is elementary law and is constantly being followed by the courts. * * * Suppose A. is domiciled in California and dies intestate, leaving personal property in Utah. Then, when the courts in Utah distribute such personal property, they follow the law

of succession of California and not the law of succession in Utah. * * * The courts in California have no right to interfere with the property in Utah or its administration in such illustration.''

The foregoing clearly reflects counsels' position, which is in harmony with the provisions of section 2822, Comp. Laws Utah 1907, heretofore briefly considered and discussed.

The judgment of the district court is affirmed, with costs.

CORFMAN and THURMAN, JJ., concur.

GIDEON, J. (dissenting).

The controlling questions in this case, as I view the facts as disclosed by the record and contained in the opinion of Mr. Justice McCARTY, are, as stated by appellant in her brief:

''(1) Can the Utah court deprive the California and Nevada courts of the right to construe the provisions of a will in their jurisdictions, and as to real estate or the proceeds of real estate within those jurisdictions? (2) Can respondent, under an order of the Utah court, seize property in Utah which belongs to other legatees, for the purpose of paying an alleged claim and legacy growing out of the receipt of mining royalties in other states?''

The will of deceased has been admitted to probate in both the states of Nevada and California, and it is admitted that the administration in the state of California is the domiciliary administration. Appellant objects to the jurisdiction of the courts of this state upon two grounds: (1) That it is an effort to distribute property not within the jurisdiction of the state; and (2) that she is entitled to have the will construed, to determine the rights of the petitioner (respondent) to receive any part of the royalties, by the courts of the domiciliary administration.

It is conceded by counsel for respondent that the courts of one state will not attempt to administer or distribute the assets of an estate located in another state. It is also conceded that the courts of this state in the distribution of personal property are controlled by the construction or interpre-

tation of the will made by the courts of the domiciliary ad-
ministration.  At the oral argument of this case counsel con-
ceded these two propositions to be elementary.  It is admitted
that the mining properties from which the royalties in ques-
tion were received are located within the states of California
and Nevada, and there is no contention that the moneys re-
ceived for such royalties from such mining claims were ever
within the state of Utah.  For those reasons· I am unable to
see upon what facts it can be claimed that the decree of the
district court does ·not distribute property not within this
state.  It is true that the appellant (executrix) has property
belonging to the estate within this state sufficient to pay the
amount claimed by the petitioner and as decreed by the dis-
trict court.  Even if it be true that such moneys belong to
and constitute a part of the "residuary fund," the petitioner
can have no claim or right upon them, as, under the terms of
the will, her rights, whatever they are, grow out of and belong
to specific property mentioned and described in the eighth
item of the will.  It is the contention of the executrix (ap-
pellant) that the proper construction of that item does not
entitle the respondent to any part of such royalties and she
objects to this court taking jurisdiction and construing the
provisions of the will which give the petitioner the right
claimed, and insists·that she has the right to have those provi-
sions construed by the court of the domiciliary administra-
tion.  In my judgment such are her rights, not only under the
accepted rule of interpretation of wills respecting personal
property in every state where the rule has not been abrogated,
but that she has such rights under the express provisions of
our statute.   Comp. Laws Utah 1907, section 2822, is as
follows:

"Except as otherwise provided, the validity and interpreta-
tion of wills are governed, when relating to real property
within this, state, by the laws of this state; when relating to
personal property, by the law of the testator's domicile."

If the royalties in question be held to be personal property
and were actually within this state, under the provisions of
that statute it would be the duty of the court to distribute
such personal property according to the construction of the

will made by the courts of the domiciliary administration. On the other hand, if the royalties be construed as a part of the purchase price of the land from which the minerals were extracted then the respondent would have no right in the royalties, except such right as she had in the real property from which such royalties were obtained. Therefore, it seems to me that this court must, in order to determine the rights of the respondent to the moneys in question, determine her rights in the lands from which the royalties are obtained. In other words, we are asked to determine by the construction of the will the rights of the respondent in real property located outside of the state of Utah and in proceedings ancillary to the domiciliary administration. This we may not do. It is no answer to that contention, in my judgment, to say that the executrix has property in this state belonging to the estate from which the judgment could be paid. The executrix has the right to have the courts of the domiciliary administration interpret the will, and any action by the courts of this state disposing of the property of the estate without such construction of the domiciliary administration deprives the executrix of a right to which she is entitled. Neither, in my judgment, is it any answer to hold that a legatee has the same rights against an estate as a general creditor. Conceding that to be the law (which I do not), still the executrix is entitled to have the provisions of the will construed, by the courts authorized to interpret it, to determine and fix the rights of the legatee or claimant respecting the liability of the estate or the right of the legatee in the property belonging to the estate. That right the executrix has not enjoyed.

If the royalties in question had been received from mining properties located in this state, then a different question would be presented; but, under the admitted facts as they appear in the record, I am unable to come to any other conclusion than that the rights of petitioner in that money should not be determined by the courts of this state.

In the main case relied upon by respondent, and from which numerous quotations are made in the majority opinion (*Harvey* v. *Richards*, Fed. Cas. No. 6184), the facts are not at all

similar to the facts here.    The question for determination in
that case was:

> "Stated in broad terms it comes to this, whether a court of equity
> here has competent authority to decree distribution of intestate property
> collected under an administration granted here, the intestate having died
> domiciled abroad, and the distribution being to be made according to the
> law of his foreign domicile."

Further on in the opinion the court says:

> "The property is here, the parties are here, and the rule of distribu-
> tion is fixed.    What reason then exists why the court should not proceed
> to decree according to the rights of the parties?    *    *    *"

In the case at bar the property is not here, the rule of dis-
tribution is not fixed.    On the contrary, it is the contention of
the executrix that she is entitled to have the rule of distribu-
tion fixed by the courts of the domiciliary administration be-
fore she be required to pay any part of the royalties to the
petitioner or before the petitioner has any right to demand
the same.

For the reasons indicated, I dissent.

FRICK, C. J. (dissenting).

If the conclusions of the majority of this court were based
upon the proposition that, in view of the undisputed facts of
this case, the affirmance of the judgment could not result in
any injury to any one interested in the estate and as giving to
Mrs. Stanley, one of the legatees under the will, what she ulti-
mately would be entitled to from the estate, I should readily
concur in the affirmance of the judgment.    The decision, how-
ever, is so broad and sweeping, and withal asserts a number
of propositions in which I cannot agree, that I feel impelled
to dissent so far as those propositions are concerned.

For example, the majority make no distinction whatever be-
tween the rights of a creditor who has claims against an es-
tate and those of a legatee claiming under the will.    It is
broadly asserted that the claims of a legatee who claims under
the will should be protected the same as those of a creditor by
the court of ancillary probate, and many cases are cited which,

it is contended, support the proposition. While I have no quarrel with the decisions that are cited, and, likewise, to a limited extent at least, concur in the proposition that a court of ancillary probate should protect the rights of both the legatee and the creditor, yet I cannot concur in the proposition as broadly as it is stated in the majority opinion. It should be remembered that the rights of a creditor who prefers a claim against an estate are not at all dependent upon the provisions of the testator's will. Indeed, the creditor's claims, if found valid, must be satisfied, out of the estate, regardless of whether anything remains for the legatee or not. Upon the other hand, the rights of the legatee depend entirely upon the provisions of the will. If his rights under the will fail, he has none. If, therefore, there is a dispute between different legatees, or between certain classes of legatees, if the will divides them into classes, and a question respecting the rights of a particular legatee, or of a particular class, arises which can only be determined by a construction of the several provisions of the will, then, I contend, the only court that can finally construe the provisions of the will and determine the rights of the claimants under it is the court of domiciliary probate. The meaning and effect of the will must be the same in all states and in all places so far as the rights of legatees claiming under it are concerned. If, therefore, the provisions of the will are doubtful, and the rights of the claimants under it are in dispute, the court of domiciliary probate must determine and settle the rights of the disputants if the claimants under the will or the executor insists upon it. It is self-evident that, in case of dispute between the legatees respecting their rights under the will, some court must determine and fix what those rights are. Where the testator leaves property in but one state or jurisdiction, no difficulty ordinarily arises respecting the court by which the will must be construed and the rights of the claimants under it determined. Where, however, as here, the testator leaves property in at least three states, and there is a dispute respecting the rights of certain legatees to a certain fund or bequest, there is, there logically can be, but one court who possesses the right to construe the will and to settle the dispute, and that must be the

court of domiciliary probate. Under any other rule, the will of a testator might be held to mean one thing in one jurisdiction or state and a different thing in another jurisdiction or state. One legatee living in one state might thus be awarded a bequest, or a part of a bequest, belonging to another living in another state. Chaos and disorder would be the inevitable result.

I am in thorough sympathy with the proposition that the courts of the state in which some of the property of the testator is located should protect the rights of the legatees who are domiciled in such state. Where, however, as here, a dispute respecting the meaning of the will, and hence respecting the rights of the legatees under it, exists, then, in my judgment, the courts of ancillary probate should not order a distribution of any part of the estate until the rights of the legatees are determined by the court of domiciliary probate. Of course, in actions to settle disputes respecting real property the title to which is based upon a will, the courts of the state in which the real estate is located necessarily must be called upon to construe the will. In such actions it is quite possible that the courts of different states may disagree respecting the meaning of certain provisions of a will, the same as they may disagree respecting the different stipulations of contracts and the different provisions of a statute. In such cases, however, those are the only courts upon whom is conferred the power and jurisdiction to adjudicate the title which may be in question. That is quite a different matter, however, from construing the provisions of a will for the purpose of determining the rights of legatees under it. In the latter class of cases the power and jurisdiction to order final distribution among the legatees devolves upon the court of domiciliary probate. Courts of ancillary probate should, therefore, wait until the rights of the legatees are determined and fixed. No injury can possibly result from following such a course, since the court of ancillary probate may easily protect the rights of any legatee by ordering the property retained in the state of ancillary probate until the rights of the claimants under the will are fully determined. If, however, the court of ancillary probate undertakes to construe the will for the purpose of

determining the rights of a particular legatee under it whose rights are in dispute, injustice may easily result. For example, the executor of a will must ultimately report to the court of domiciliary probate and his accounts must be approved by that court. If, therefore, that court should find that the executor had paid out the funds of the estate to a legatee in another state who was not entitled thereto, the court would refuse to approve the executor's accounts, and he and his bondsmen might thus be prejudiced. Where, as in the numerous cases cited and relied on by the majority, no construction of the will is necessary and, no dispute exists between the claimants under it, then there is no legal obstacle in the way of the court of ancillary probate to order distribution of that portion of the property which is within the state of ancillary probate, to such of the legatees as may be found to be entitled to it. We have no such case here, however. Here the executrix contends that under the provisions of the will the fund of which Mrs. Stanley desires partial distribution belongs to the residuary legatees; that is, to a different class of legatees. The majority, however, insist that the claim of the executrix is not well founded. If that be conceded, yet it is not for me, nor for this court, to determine. The right to determine that question belongs to the court of domiciliary probate, and that court may or may not agree with our construction of the will. Neither is it material whether the conclusions of that court, in our judgment, are sound or unsound. That court having the right to determine, its determination is final and binding upon all other courts. The majority opinion, as I read it, however, is to the effect that it is wholly immaterial whether the court of domiciliary probate agrees or disagrees with our construction. To that extent, in my judgment, the opinion of the majority is erroneous.

While I concur in the views expressed by Mr. Justice GIDEON, yet I felt it my duty to more particularly state the precise reasons for, and the extent of, my dissent.